# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FAUST PRINTING, INC. and FAUST PRINTING )
                                           )
                   Plaintiffs              )
                                             )      Case No. 02 C 9345
         v.                                     )
                                           )      Judge Joan B. Gottschall
MAN CAPITAL CORP., et al.               )
                                           )
              Defendants.          )

## MEMORANDUM OPINION AND ORDER

Faust Printing, Inc. and Faust Printing (collectively "Faust") sued MAN Capital Corporation ("MAN Capital"), MAN Roland, Inc. ("MAN Roland"), MAN AG ("MAN"), MAN Roland Druckmaschinen AG ("MAN AG"), and Roes 1 through 100 for fraud related to the sale and financing of a printing press. This court's jurisdiction is based on diversity.[1] MAN Capital, MAN Roland, and MAN and MAN AG have filed motions to dismiss. For the reasons that follow, MAN Roland's and MAN Capital's motions to dismiss are denied, and MAN's and MAN AG's motion to dismiss for lack of personal jurisdiction is granted.

## I.     Background

From September 1997 to January 1998, Faust negotiated with MAN Roland for the purchase of a new printing press. MAN Roland proposed to sell Faust a Roland 700 series offset printing press with various options. Faust considered other manufacturers' presses which were

---

[1] Faust Printing, Inc. is incorporated in California with its principal place of business in California, and Faust Printing is a general partnership with all partners being citizens of California. MAN and MAN AG are both German entities. MAN Roland and MAN Capital are both incorporated in Delaware with their principal places of business in Illinois. The complaint alleges that damages exceed $75,000.

less expensive, but MAN Roland representatives told Faust that the MAN Roland press would be a more economical choice because it could produce a higher output and was more efficient than competitors' presses. Faust then prepared a list of performance criteria for the press, and these criteria were incorporated into the subsequent contract between Faust and MAN Roland. Faust also told MAN Roland that installation time and training were important considerations. MAN Roland representatives told Faust that the press would take about four weeks to install and that Faust's employees would be fully trained by the time installation was complete.

On January 23, 2003, Faust entered into the Machinery Contract with MAN Roland.[2] Under this contract, Faust agreed to purchase a Roland 700 series offset printing press with various options for $2,569,317. The performance criteria and tests to be performed at the completion of installation were attached to the Machinery Contract as Addendum A. Faust alleges that it was fraudulently induced to enter into the Machinery Contract by MAN Roland's false representations that (1) the press was new, (2) the press could meet the performance criteria, and (3) the press could be installed and Faust's employees trained in the time represented.

At the time of the purchase, Faust sought to finance the purchase of the press through MAN Roland. Faust alleges that MAN Roland representatives stated that MAN Roland had an "in-house" financing department that could provide financing. Faust alleges that MAN Roland and MAN Capital[3] represented that they were same company. On January 22, 1998, Faust

---

[2]The complaint inconsistently states that Faust purchased the press on February 24, 1998. TAC ¶ 13.

[3]According to Faust, MAN Finance became MAN Capital.

alleges, it received a lease approval letter from Richard Pierzchala, signing as "General Manager" of MAN Roland. On January 30, 1998, Faust alleges it received a letter from David Zwolinski, Order Administrator at MAN Roland, indicating that financing had been approved and that there existed an assignment by MAN Roland to MAN Finance of the monthly payments due under the Machinery Contract. A Master Lease Agreement ("Lease Agreement") was subsequently executed on February 24, 1998 by Faust and Pierzchala.

Shortly thereafter, on February 27, 1998, Faust received new signature pages to the Lease Agreement from Pierzchala. According to Faust, Pierzchala claimed he had discovered a "typographical error" and requested that Faust sign the new signature pages. Faust claims that Pierzchala told it that if the new pages were not signed, installation of the press would be halted. Faust alleges that the typographical error was in fact a substitution of MAN Finance for MAN Roland as the lessor of the press. Faust alleges that the substitution of MAN Finance as the lessor resulted in the lessor not being subject to the performance criteria of the Machinery Contract. Faust wanted the purchase and lease to be from the same entity, it alleges, so that if the performance standards were not met, it would not be liable for the lease payments. Faust alleges that it was fraudulently induced to enter into the Lease Agreement by MAN Roland and MAN Capital's representations that the same company was providing the press as well as the financing.[4]

---

[4]Faust also alleges that MAN Capital and MAN Roland are alter egos of one another. According to Faust, on July 1, 1998, MAN Roland merged into MAN Capital and MAN Finance, and the surviving entity was called MAN Capital. MAN Roland then formed a new corporation as a wholly owned subsidiary of MAN Capital under the name MAN Roland, Inc. Faust allege that MAN Capital and the original MAN Roland are the same entity, and MAN Capital continues to use the same Delaware identification number.

Installation of the press was completed in September 1998. However, Faust alleges, the press failed to perform to specifications, producing substandard quality printings. Despite numerous complaints, Faust alleges that defendants were never able to make the press conform to the performance requirements of the Machinery Contract. Faust also alleges that the press was not new as represented by MAN Roland, but had in fact been previously sold to another company in 1996. During the installation of the press at Faust's facility, it alleges, a MAN Roland employee altered the serial number plate on the press to conceal the age of the press from it.

On November 21, 2001, MAN Capital filed a complaint in Rancho Cucamonga Superior Court in California seeking money damages from Faust and possession of the press because Faust failed to make payments on the lease. Faust filed a cross-complaint alleging fraud. MAN Roland filed a Motion to Dismiss or Stay the Cross-Complaint based on forum non conveniens; the court stayed all proceedings in California and suggested that Faust file an action in Illinois.

On December 27, 2002, Faust filed the instant suit. Faust's original complaint alleged fraud, breach of express warranty, breach of implied warranty, and rescission and breach of contract. On March 25, 2004, this court granted MAN Roland's and MAN Capital's motions to dismiss. The court held that Faust had failed to plead the fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b), and that the remaining claims were time-barred because the suit was initiated after the limitations period in the Machinery Contract had expired.

Faust then obtained leave from the court to file an amended complaint. The amended complaint alleged a single count of fraud against all defendants. Defendants moved to dismiss,

and on August 29, 2005, the court granted the motions to dismiss and required that Faust comply with Federal Rule of Civil Procedure 10(b) by "setting forth each alleged act of fraud in a separate count specifically identifying the alleged fraudulent behavior of each individual defendant."

Faust filed a second amended complaint in accordance with the court's order. The second amended complaint alleged fraudulent inducement to enter into the purchase contract against MAN Roland (Count I), fraudulent inducement to enter into the finance transaction against MAN Roland and MAN Capital (Count II), liability as an alter ego against MAN Roland and MAN Capital (Count III), liability as an alter ego against MAN and MAN AG (Count IV). Defendants filed motions to dismiss the second amended complaint. The court dismissed that complaint because it failed adequately to allege the citizenship of Faust Printing, a general partnership. Subsequently, Faust filed a third amended complaint correcting the prior pleading deficiency. Defendants then moved to reinstate their previously filed motions to dismiss, and the court granted the motions to reinstate.

## II.     Discussion

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court reviews all facts alleged in the complaint and any reasonable inferences drawn from those facts in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court will grant the motion only if it appears that the plaintiff cannot prove any set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, when a complaint alleges fraud or mistake, the circumstances must be stated with particularity; a plaintiff must plead with specificity the who,

what, where, and when of the alleged fraud or mistake.  Fed. R. Civ. P. 9(b); *Slaney v. Int'l Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2002).

As an initial matter, Faust did not attach the Machinery Contract or the Lease Agreement to the Third Amended Complaint ("TAC").  MAN Roland attached the Machinery Contract to its motion to dismiss, and MAN Capital attached the Lease Agreement to its motion to dismiss.  In determining whether to grant the motions to dismiss, the court may properly consider these contracts because Faust refers to them in the complaint and they are central to the claims. *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994).

A.      MAN Roland's Motion to Dismiss

1.      *Limitations Clause of the Machinery Contract: Count I*

MAN Roland argues that Count I is time-barred by the limitations period in the Machinery Contract.[5]  Paragraph 18 of the Machinery Contract states in relevant part that "no action may be maintained by Purchaser with respect to any dispute arising under this agreement unless such action is commenced within eighteen (18) months after delivery of the Machinery." Since Faust filed its claims more than eighteen months after the press was delivered, MAN Roland argues that the claims are barred by the terms of the Machinery Contract.

In support of this argument, MAN Roland relies upon *Sweet Dreams Unlimited v. Dial-A-Mattress International*, 1 F.3d 639 (7th Cir. 1993).  In that case, the court held that plaintiff's

---

[5]Although MAN Roland states that the "fraud claims" should be dismissed, the court construes this as an argument to dismiss only Count I, fraudulent inducement to enter into the Machinery Contract.  Count II is for fraudulent inducement to enter into the Lease Agreement. MAN Roland has made no argument that the contractual limitations clause in the Machinery Contract could somehow apply to the Lease Agreement.  In the court's order dismissing the counts in the original complaint, the counts dismissed based on the contractual limitations period related exclusively to the Machinery Contract.  *See* Order (Mar. 23, 2004).

claims were subject to arbitration under a contractual term requiring arbitration of all disputes "arising out of the Agreement." *Id.* at 642-44. The court held that "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Id.* at 642. In addressing the cases relied on by the district court, the Seventh Circuit stated that there was "no need to disagree with the Second and Ninth Circuits that 'arising under' may denote a dispute somehow limited to the interpretation and performance of the contract itself." *Id.* Additionally, *Sweet Dreams* involved an arbitration clause and the strong federal policy in favor of arbitration as a medium of dispute resolution. *Id.* Another court in this district recently discussed whether certain disputes fell within the scope of an arbitration clause which applied to disputes "arising under" the contract and held that "arising under" encompasses only disputes that arise from the performance or interpretation of the contract itself. *Nissan Forklift Corp. v. Zenith Fuel Systems, LLC*, No. 05 C 4849, 2006 WL 643937, at *5 (N.D. Ill. Mar. 3, 2006).

In this case, the applicable clause is a limitations clause and not an agreement to arbitrate. Nevertheless, *Sweet Dreams* and *Nissan* are instructive in interpreting the expression "arising under" in the limitations clause. The court agrees that "arising under" includes those disputes that arise from the interpretation or performance of the Machinery Contract. MAN Roland does not dispute this. It argues, however, that Faust's fraud claim arises under the Machinery Contract because Faust's fraud allegations would also constitute breaches of the Machinery Contract. The court disagrees.

Faust alleges that it was fraudulently induced to enter into the Contract. Under Illinois law, a claim for fraudulent inducement requires: "(1) a false statement of material fact; (2)

defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 881-82 (7th Cir. 2005) (quoting *Capiccioni v. Brennan Naperville, Inc.,* 339 Ill. App. 3d 927, 933 (2d Dist. 2003)). Faust alleges in Count I that agents of MAN Roland made false representations that the press was new, that it could meet the performance capabilities, and that the press could be installed and employees trained in the time represented. These allegations are separate from the alleged failures in performance under the terms of the contract because Faust alleges that MAN Roland's agents made these representations to induce Faust to purchase the press when MAN Roland knew the representations were false. The motion to dismiss based on the contractual limitations period is denied.

### 2. *Pleading Requirements for Promissory Fraud: Count I*

MAN Roland also argues that Faust has failed to state a claim in Count I for fraudulent inducement because Count I is a claim for promissory fraud, which, according to MAN Roland, has special pleading requirements. Promissory fraud occurs when "the sole breach relates to a promise to do something in the future. Where the defendant misrepresented an existing or past fact, a fraud claim arises." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 956 n.8 (N.D. Ill. 2006) (quoting *Midland Mgmt. Corp. v. Computer Consoles, Inc.,* No. 87 C 0971, 1992 WL 281354, at *3 (N.D. Ill. Oct. 8, 1992) (Posner, J., sitting by designation)). Promissory fraud is actionable under Illinois law only if "it is part of a scheme to defraud, that is, unless it is one element of a pattern of fraudulent acts." *Systems America, Inc. v. Providential Bancorp, Ltd.*, 05 C 2161, 2006 WL 463314, at *8 (N.D. Ill. Feb. 24, 2006) (quoting *Speakers of Sport, Inc. v.*

*ProServ, Inc.,* 178 F.3d 862, 866 (7th Cir. 1999)). "The requirement that a plaintiff show a pattern of fraudulent acts is designed to reduce the likelihood of a spurious suit; 'for a series of unfulfilled promises is better (though of course not conclusive) evidence of fraud than a single unfulfilled promise.'" *Id.* (quoting *Speakers,* 178 F.3d at 866); *see also AAR Int'l, Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 799 (N.D. Ill. 2002) (denying a motion to dismiss a claim for promissory fraud based on allegations of "a number of related broken promises"). [6]

In this case, Faust alleges a series of broken promises: the press was represented to be new when MAN Roland knew it was not, MAN Roland represented that the press could meet the performance guaranties when it knew they could not be met, and MAN Roland falsely represented the time it would take to install the press and train Faust's employees.[7] Therefore, the complaint alleges a series of broken promises related to the Machinery Contract.

MAN Roland also argues that allegations in the complaint belie Faust's claim that MAN

---

[6]Other courts have stated that for promissory fraud, "a plaintiff must allege specific, objective manifestations of fraudulent intent." *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3050610, at *4 (N.D. Ill. Nov. 8, 2005) (citing *Am. Diag. Med., Inc. v. Cardiovascular Care Group,* No. 03 C 8929, 2004 WL 1490268, at *2 (N.D. Ill. July 1, 2004) (finding claim for fraudulent inducement where plaintiff alleged that defendant did not intend to abide by its promise to procure insurance, made by defendant to induce plaintiff into executing a contract)).
In this case, MAN Roland argues that Faust has failed to allege any specific, objective manifestations of fraudulent intent. Faust argues that this requirement is met because the Third Amended Complaint alleges that MAN Roland's agents knew that the press was not new at the time they represented that it was and that a MAN Roland employee altered the date of manufacture on the press' serial number plate to conceal this fact. This, coupled with the pattern of broken promises discussed above, shows that the Third Amended Complaint sufficiently states a claim for promissory fraud.

[7]Faust also argues that the complaint sufficiently alleges the substitution of the signature page of the Master Lease Agreement. The court need not address these allegations, however, because MAN Roland's argument that Faust have not adequately pled promissory fraud appears to be directed only at Count I.

Roland never intended to perform under the contract. MAN Roland relies on the allegation that "MAN Roland failed to make the press conform to the applicable warranties, despite a reasonable number of attempts to do so." TAC ¶ 24. According to MAN Roland, since it attempted to make the press conform to the contractual warranties, it must have intended to comply with the warranties when it represented that it could.

In support of this argument, MAN Roland relies on *Sa'Buttar Health & Medical, P.C. v. Tap Pharms., Inc.*, No. 03 C 4074, 2004 WL 1510023 (N.D. Ill. July 2, 2004). In that case, a clinic alleged that a pharmaceutical company promised to provide it with a constant supply of a drug. *Id.* at *4. In evaluating the clinic's claim of promissory fraud, the court stated that "initial compliance with a promise is contrary to the existence of fraudulent intent." *Id.* Since the pharmaceutical company had filled several orders for the drug before refusing to fill an order, the court held that its initial compliance was contrary to the clinic's claim of fraudulent intent. *Id.*

In this case, the complaint alleges that the press never operated according to the performance guaranties. TAC ¶ 23. Although the complaint alleges that MAN Roland made attempts to make the press conform to the guaranties, it also alleges that MAN Roland's agents made false representations about the capabilities of the press to induce Faust to purchase it. TAC ¶ 26. Drawing all inferences in favor of Faust, as the court must, MAN Roland's attempts to repair the press do not conclusively show a lack of fraudulent intent at the time it made representations about the performance capabilities of the press. Since the complaint alleges a series of broken promises which sufficiently state a claim for promissory fraud, the motion to dismiss Count I is denied.

3.      *Economic Loss Doctrine: Counts I and II*

Man Roland argues that the economic loss doctrine bars Faust's claims. In *Moorman Manufacturing Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91 (1982), the Illinois Supreme Court held that a plaintiff "cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation." The Illinois Supreme Court has recognized three exceptions to the general rule: (1) where the plaintiff sustained damage, such as personal injury or property damage, resulting from a sudden or dangerous occurrence, *id.* at 86; (2) where the plaintiff's damages were proximately caused by defendant's intentional, false representation, *id.* at 88-89; and (3) where the plaintiff's damages were proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions, *id.* at 89.

The second exception is relevant here because Faust alleges that MAN Roland made intentional, false representations. MAN Roland argues that the Illinois Supreme Court recognized this exception only in dicta, and that this court should predict that the Court would not recognize this exception if faced directly with the issue. The court declines to do so.

Other courts in this district recognize the intentional fraud exception to the *Moorman* doctrine. *See Daimler Chrysler Ins. Co. v. Barrington Motor Sales RV*, No. 05 C 6306, 2006 WL 1005859, at *2 (N.D. Ill. Apr. 13, 2006) (holding that plaintiff's claim for fraud was not barred by the *Moorman* doctrine because "an element of fraud is to knowingly use a false statement to induce another party"); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, No. 01 C 9389, 2004 WL 532717, at *4 (N.D. Ill. Feb. 26, 2004) (holding that the *Moorman* doctrine did not bar plaintiff's claim that defendant "fraudulently misrepresented its product's capabilities"); *Kingsford Fastener, Inc. v. Koki*, No. 00 C 7395, 2002 WL 992610, at *3 (N.D. Ill. May 15,

2002) (holding that plaintiff's claims of fraud and intentional misrepresentation were not barred by the *Moorman* doctrine).  None of the cases cited by MAN Roland apply Illinois law.  MAN Roland's Mem. in Support of Mot. to Dismiss, at 12 (citing cases applying Wisconsin, Pennsylvania, Minnesota, Michigan, and New Jersey law).

Significantly, the Illinois Supreme Court continues to state that an exception to the *Moorman* doctrine for intentional, false representations exists.  *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 843 N.E.2d 327, 333 (2006).  Since the Illinois Supreme Court has given no indication that it intends to eschew or limit this exception, the court finds that the intentional fraud exception to the *Moorman* doctrine applies to this case.  The motion to dismiss on this basis is denied.

### 4.      *Miscellaneous Arguments: Count II*

In the last section of its Memorandum in Support of its Motion to Dismiss, MAN Roland includes two arguments: (1) that Faust has not alleged a sufficient basis for its damages and (2) that Faust could not have reasonably relied on representations that MAN Roland was the manufacturer of the press.

First, MAN Roland argues that Count II should be dismissed because Faust has not alleged how it was damaged by fraudulent inducement to enter into the Master Lease Agreement. Faust alleges that it was defrauded because MAN Roland switched the signature pages on the Master Lease Agreement and because defendants misrepresented their corporate structure. According to MAN Roland, however, Faust has not alleged how it was damaged by these misrepresentations.

Faust alleges that it informed MAN Roland's agent that it "wanted to finance the

transaction directly with MAN Roland to avoid creating a non-recourse finance lease arrangement whereby Faust would have no recourse against the financing entity in the event of default by MAN Roland on any of the terms of the purchase agreement, including the performance guaranties." TAC ¶ 35. Thus, Faust wanted to obtain the press and financing from the same company so that if the press failed to comply with the contractual requirements, Faust would need to seek recourse only from one company. The complaint alleges that based on defendants' misrepresentations, Faust ended up with a purchase from one entity and financing from another. The court cannot determine at this early stage whether Faust can prove any damages based on this change, particularly given the conclusory nature of MAN Roland's argument. The motion to dismiss Count II on this basis is denied.

Next, MAN Roland argues that any reliance on representations that MAN Roland was the manufacturer of the press was unreasonable because the Machinery Contract explicitly states that MAN Roland was not the manufacturer. Although the complaint alleges that Faust believed that MAN Roland was the manufacturer of the press, Faust argues that Count II is not premised on MAN Roland being the manufacturer, but is premised on the fact that Faust bargained for a lease agreement and purchase agreement with the same company. While the complaint is perhaps inartfully drafted, the court agrees with Faust. The complaint clearly alleges that the fraudulent misrepresentations resulted in a lease with one company and a purchase contract with another. Even if the court agreed with MAN Roland that it would be unreasonable to rely on a representation that MAN Roland was the manufacturer of the press, MAN Roland has not argued that it was unreasonable for Faust to rely on alleged representations that MAN Roland was providing the financing. That is the crux of Count II. The motion to dismiss Count II on that

basis is denied.

B.      <u>MAN Capital's Motion to Dismiss</u>

      *1.      Reliance: Count II*

MAN Capital argues that Count II should be dismissed because (1) the integration clause in the Master Lease Agreement precludes reliance on any pre-contractual representations, (2) the warranty disclaimer in the Master Lease Agreement shows that Faust could not have thought it could hold the lessor liable for inability to meet the performance guaranties in the Machinery Contract, and (3) Faust cannot claim to be surprised by the substitution of the signature page because the original Master Lease Agreement gave several indications that MAN Capital (not MAN Roland) was the lessor.

First, MAN Capital argues that Faust cannot rely on any pre-contractual oral representations to support its fraud claim because the Master Lease Agreement contains an integration clause.[8] However, other courts in this district have held that fraudulent inducement claims are not barred by the existence of an integration clause. *American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 C 9421, 2005 WL 3236590, at *5 (N.D. Ill. Nov. 29, 2005) ("To hold that an integration clause in a fraudulently induced contract precludes a fraud-based challenge to the contract is illogical and would also provide a blueprint for defrauding parties to shield their wrongdoing.") (citation omitted); *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3050610, at *5 (N.D. Ill. Nov. 8, 2005) (holding that the presence of a "merger clause" did not bar a fraudulent inducement claim). Indeed, evidence of fraud outside

---

[8]Paragraph 22(f) of the Master Lease Agreement states: "Each lease contains the entire agreement between the parties with respect to the subject matter thereof and the transactions related thereto and supersede [sic] any and all prior agreements, promises, and representations, written or oral, with respect thereto."

the contract is admissible as an exception to the parol evidence rule. *See, e.g., General Elec. Credit Auto Lease, Inc. v. Jankuski*, 177 Ill. App. 3d 380, 386 (1st Dist. 1988) ("[P]arol evidence on the allegation of fraud in the inducement . . . is admissible to prove the fraud."). The integration clause in the Master Lease Agreement therefore does not preclude Faust from relying on pre-contractual representations to prove its fraudulent inducement claim. The motion to dismiss Count II based on the integration clause is denied.

Next, MAN Capital argues that the express warranty disclaimer in the Master Lease Agreement makes unreasonable any reliance on the lessor being liable for breaches of the performance guaranties.[9] MAN Capital argues that the warranty disclaimer should have alerted Faust that it was entering into a "non-recourse lease finance arrangement." In response, Faust argues only that, since the Equipment Rider to the Lease Agreement indicates that the press is new, the lessor was indeed making some representations about the characteristics of the press. This is largely non-responsive to MAN Capital's argument. Nevertheless, Faust's complaint alleges that Faust anticipated entering a purchase agreement and lease agreement with the same entity based on representations made by defendants. MAN Capital fails to point to any case law

---

[9]Paragraph 6 of the Master Lease Agreement appears on the first page in all capital letters and states: "LESSOR, NOT BEING THE MANUFACTURER OF THE EQUIPMENT, NOR THE MANUFACTURER'S AGENT, IS NOT REQUIRED TO NOR MAKES ANY WARRANTY OR REPRESENTATION EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, MERCHANTABILITY, USE, OPERATION, OR PERFORMANCE, OR THE DELIVERY, SERVICING, MAINTENANCE, OR REPAIR, OF ANY EQUIPMENT, OR OF THE MATERIAL OR WORKMANSHIP THEREOF, IT BEING AGREED THAT ALL EQUIPMENT IS BEING LEASED 'AS IS' AND THAT ALL SUCH RISKS, AS BETWEEN LESSOR AND LESSEE ARE TO BE BORNE BY LESSEE AT ITS SOLE RISK AND EXPENSE. LESSEE ACCORDINGLY AGREES NOT TO ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR BASED THEREON."

addressing whether the lease and purchase agreements in this case would have created a "non-recourse lease finance arrangement" if the facts were as Faust allegedly believed. Since neither party has adequately addressed this issue, the court declines to dismiss Count II on this basis.

Further, MAN Capital argues that Faust's fraud claim based on the substitution of the signature page of the Lease Agreement should be dismissed. Faust alleges that after execution of the Lease Agreement, it was contacted by defendants and required to sign a new signature page which indicated that MAN Capital was the lessor (the original agreement stated that MAN Roland was the lessor on the signature page). Faust also alleges that it was told that if it did not sign the new page, installation of the press would cease.

MAN Capital argues that other provisions in the Lease Agreement should have alerted Faust that the Lease Agreement was with MAN Capital (previously MAN Finance). MAN Finance's logo appeared at the top of each page of the Lease Agreement; the preamble to the lease states that MAN Finance is the lessor; and the amendments and riders to the Lease Agreement name MAN Finance in the signature block. Faust does not dispute that it knew it was dealing with MAN Capital, but argues that it believed that MAN Roland and MAN Capital were the same company. The original signature page shows that some ambiguity existed in the contract at the time it was originally signed as to which party (MAN Roland or MAN Capital) was acting as the lessor. The allegations that the signature pages were substituted is part and parcel of the claim that Faust was fraudulently induced to enter into the Lease Agreement. Therefore, the court declines to dismiss Count II on this basis.

2. *Alter Ego*

Count III of the Third Amended Complaint alleges that MAN Roland and MAN Capital

are alter egos of one another.  In this count, Faust seeks to hold MAN Capital liable for MAN Roland's actions related to the Machinery Contract.  MAN Capital argues that this count should be dismissed because Count I should be dismissed.  This argument is premised entirely on MAN Roland's motion to dismiss Count I.  Since the court has denied that motion, MAN Capital's motion to dismiss Count III is also denied.

C.       MAN's and MAN AG's Motion to Dismiss

MAN and MAN AG, both German entities, argue that this court does not have personal jurisdiction over them.  Faced with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of personal jurisdiction over the defendant.  *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997).  In analyzing such a motion, the allegations in the complaint are taken as true unless controverted by a defendant's affidavit; any factual conflicts are resolved in favor of plaintiff.  *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987).

For the court to exercise personal jurisdiction over a defendant, it must be proper under both the United States and Illinois Constitutions.  *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.,* 42 F. Supp. 2d 821 (N.D. Ill. 1999).  Because there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir. 2002) (citation omitted), this court will analyze personal jurisdiction with a single due process inquiry.  *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir. 1997).  In order for a court to exercise personal jurisdiction over a non-resident defendant, due process under the U.S. Constitution requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). A court can acquire personal jurisdiction over a defendant through either general or specific jurisdiction.

MAN and MAN AG argue that since they are not parties to either the Machinery Contract or the Master Lease Agreement, Faust has alleged no basis for this court to assert personal jurisdiction over them. Faust argues that the court has personal jurisdiction over MAN Roland and MAN Capital based on the Machinery Contract and Master Lease Agreement, and that MAN Roland, MAN Capital, MAN, and MAN AG are in actuality the same entity. Thus, Faust argues that the court has personal jurisdiction over MAN and MAN AG since they are alter egos of entities over which this court has personal jurisdiction.

"[I]n general, a parent corporation may not be held to account for the liabilities of a subsidiary unless the legal separateness of parent and subsidiary has been disregarded in a wide range of corporate matters." *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir. 1989). In *IDS Life Insurance Co. v. SunAmerica Life Insurance Co.*, 136 F.3d 537 (7th Cir. 1998), the Seventh Circuit stated: "Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts and cannot be served under the tort provision of the long-arm statute." *Id.* at 540. In that case, the court held that the plaintiff had not established personal jurisdiction over the parent company on a theory that the parent was the alter ego of its subsidiaries. *Id.* at 540-41. The court stated that the parent could be sued if the subsidiaries were acting as the parent's agent and "conducting [the parent's] business rather than their own." *Id.* at 541; *see also Central States, Southeast and*

*Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) ("[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary.").

Courts in this district have "enumerated a number of factors for determining whether a parent company is the alter ego of its subsidiary for jurisdictional purposes." *Corporate Safe Specialists, Inc. v. Tidel Technologies, Inc.*, No. 05 C 3421, 2005 WL 1705826, at *4 (N.D. Ill. July 15, 2005) (citing *Graco, Inc. v. Kremlin, Inc.*, 558 F. Supp. 188 (N.D. Ill. 1982); *Avery Dennison Corp. v. UCB SA and UCB Films PLC,* No. 95 C 6351, 1997 WL 441313, at *1 (N.D. Ill. July 30, 1997); *Stenholt v. Centex Real Estate Corp.*, No. 95 C 2664, 1995 WL 535118, at *3 (N.D. Ill. Sept. 1, 1995)). These factors include: "whether the parent arranges financing for and capitalization of the subsidiary; whether separate books, tax returns and financial statements are kept; whether officers or directors are the same; whether the parent holds its subsidiary out as an agent; the method of payment made to the parent by the subsidiary; and how much control is exerted by the parent over the daily affairs of its subsidiary." *Id.* (quoting *Graco,* 558 F. Supp. at 191). Where the plaintiff has alleged that the parent was the alter ego of the subsidiary but the facts were insufficient to establish that the parent was actually the alter ego, courts in this district have granted motions to dismiss for lack of personal jurisdiction over the parent. *See, e.g., Corporate Safe Specialists,* 2005 WL 1705826, at *4-5 (finding that parent was not the alter ego of the subsidiary where plaintiff alleged that the parent and subsidiary shared two officers, the parent guaranteed the subsidiary's promissory note, and the parent and subsidiary consolidated

their financial statements); *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, No. 00 C 2447, 2003 WL 21542491, at *3-4 (N.D. Ill. July 3, 2003) (holding that the court lacked personal jurisdiction over the parent because some involvement by the parent in the affairs of the subsidiary was insufficient to establish that the parent was the subsidiary's alter ego).

In this case, as to the alter ego liability of MAN and MAN AG, the complaint alleges: (1) "MAN Roland and MAN Capital have acted as agents and instrument[s] of MAN and MAN AG, carrying out activities of MAN and MAN AG in the United States," TAC ¶ 8; (2) "MAN, MAN AG, MAN Roland, and MAN Capital were and are the alter-egos of each other," TAC ¶ 9; (3) "each of the Defendants was the agent, servant, and employee of each of the remaining co-Defendants and in doing the things hereinafter alleged, were acting within the course and scope of such agency and employment with the permission, consent, knowledge, and/or ratification of their co-Defendants," TAC ¶ 11; and (4) "MAN and MAN AG exercised control of the business activities of its subsidiaries such that there was a unity of ownership and control over the subsidiaries," TAC ¶ 53. Additionally, the Third Amended Complaint alleges that MAN and MAN AG were directly involved in the decision to extend financing to Faust. TAC ¶ 54.

Most of Faust's allegations are conclusory. The only factual allegations are those alleging that MAN and MAN AG were directly involved in the decision to provide financing to Faust. Faust alleges that MAN and MAN AG wanted MAN Capital and MAN Roland to extend financing so that they could get a press into the California market for marketing purposes. This alleged control over a single transaction is insufficient to establish that MAN and MAN AG were alter egos of MAN Capital and MAN Roland. Instead, MAN's and MAN AG's encouragement to provide financing for marketing purposes seems to be the type of normal

control that a parent exercises over a subsidiary without sacrificing corporate separateness. There is no indication that MAN Roland and MAN Capital were merely acting as MAN's and MAN AG's agents, rather than doing their own business, albeit with some encouragement from MAN and MAN AG.

Faust has not sufficiently shown that MAN and MAN AG were alter egos of MAN Roland and MAN Capital. Thus, there is no basis for exerting personal jurisdiction over MAN and MAN AG.[10] The motion to dismiss for lack of personal jurisdiction is granted.

---

[10]Faust argues that MAN and MAN AG have waived any argument that this court lacks personal jurisdiction by failing to file a timely pleading. The court disagrees.

In every responsive plead that MAN and MAN AG have filed, they have maintained that this court lacks personal jurisdiction over them. MAN and MAN AG have filed motions to dismiss the original complaint and the two amended complaints, and in each motion, MAN and MAN AG moved to dismiss for lack of personal jurisdiction. The court granted the defendants' first two motions to dismiss on other grounds (Federal Rule of Civil Procedure 9(b) and 10(b)).

After Faust filed the second amended complaint, the court set a deadline for the defendants to file motions to dismiss, and MAN and MAN AG missed that deadline. However, they requested leave to file their motion to dismiss instanter, and the court granted that motion. Although lack of personal jurisdiction can be waived, see Federal Rule of Civil Procedure 12(h), the court sees no reason to find that MAN and MAN AG waived their right to contest personal jurisdiction in this case. They have consistently argued that this court lacks personal jurisdiction over them, and Faust has known about this argument since MAN and MAN AG moved to dismiss the original complaint.

Additionally, Faust argues that it has alleged MAN's and MAN AG's liability under a theory of direct participation, that is, that MAN and MAN AG are directly liable for the fraud because they directed participated in the decision to extend financing to Faust. However, Faust does not argue that this theory of liability establishes personal jurisdiction over MAN and MAN AG. In this case, the court has personal jurisdiction over MAN Roland and MAN Capital by virtue of the forum selection clauses in the contracts. MAN and MAN AG are not parties to those contracts. Further, neither Faust entity is an Illinois citizen; both are citizens of California. Thus, any contacts that MAN and MAN AG may have had with the financing transaction would appear to be with California and not Illinois, and would not establish personal jurisdiction in Illinois.

### III.     Conclusion

For the foregoing reasons, MAN Roland's and MAN Capital's motions to dismiss are denied, and MAN's and MAN AG's motion to dismiss for lack of personal jurisdiction is granted.

ENTER:


____/s/_____

Joan B. Gottschall
United States District Judge

Dated: June 16, 2006